IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| SARAH C. WHITE, ETC., | ) | CIVIL NO. 04-00500 ACK-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CAROL ANN SABATINO, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION
## TO ADD CRITICAL WITNESS JAMES J. NAVIN, M.D.

Before the Court is the Motion to Add Critical Witness James J. Navin, M.D. ("Motion"), filed by Sarah C. White, Individually and as Special Administrator of the Estate of Stefan C. Bournakel, Deceased, and as Next Friend of Nicos Robert Bournakel, a minor, ("Plaintiff") on February 8, 2007. Defendant 3090, Incorporated ("Defendant 3090") filed its memorandum in opposition to the Motion on February 23, 2007. Defendants County of Maui, Franklyn L. Sylva, and Wayne M. Pagan (collectively "County Defendants") filed a joinder in Defendant 3090's memorandum in opposition on February 23, 2007. Plaintiff filed her reply on March 2, 2007. This matter came on for hearing on March 13, 2007. Michael Jay Green, Esq., and Denise Hevicon, Esq., appeared on behalf of Plaintiff; Richard Lesser, Esq., appeared on behalf of Defendant 3090; and Madelyn D'Enbeau, Esq., appeared on behalf of County Defendants. After careful

consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Plaintiff's Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

The instant case arises out of a February 13, 2004 automobile accident in which a vehicle driven by Defendant Carol Ann Sabatino collided with a vehicle driven by Stefan Bournakel ("Decedent"), who died as a result of the collision.  Prior to the accident, Defendant Sabatino took a cruise on the Alii Nui, where she allegedly became intoxicated. The autopsy performed on Decedent indicated that he had a blood alcohol content ("b.a.c.") of 0.09, which is in excess of the legal limit when operating a vehicle.  One of Defendant 3090's defense theories is that Decedent's intoxication contributed to his death.  Defendant 3090 tried to obtain testimony to this effect during the deposition of Dr. Anthony Manoukian and through the expert report of D.L. Mingori, Ph.D.  [Mem. in Supp. of Motion at 3; Exh. A to Motion (Manoukian deposition); Exh. B to Motion (Mingori report).]  Plaintiff states that "[t]hroughout this case, it has been assumed by all parties that Stefan Bournakel consumed enough alcohol to reach a 0.09 b.a.c."  [Mem. in Supp. of Motion at 3.]

Plaintiff now presents an alternate theory to explain Decedent's b.a.c. and seeks to add James J. Navin, M.D., as an

expert witness to support that theory.  Plaintiff states that, in December 2006, defense counsel, Mr. Green, had "a random thought" that it may be possible for a body to produce alcohol post-mortem.  [Id.]  One of Mr. Green's other clients said that he had heard of post-mortem fermentation and found literature on the internet describing the process.  Counsel then contacted Dr. Navin, an expert in forensic pathology, who stated that it was well-known that b.a.c. could change post-mortem, but that he was unaware of the extent that it could change.  [Id. at 4.] Dr. Navin conducted research and produced an opinion.  [Exh. C to Motion (Navin report).]  Dr. Navin reports that there have been numerous cases of deceased persons registering a b.a.c., even though it was known that they did not consume alcohol.  He even cites an autopsy performed at Maui Memorial Hospital, by the same pathologist who performed Decedent's autopsy, in which a woman who had not consumed any food or alcohol on the day of her death had a b.a.c. of 0.042.  [Mem. in Supp. of Motion at 4-5.] Dr. Navin is prepared to testify that: "Without corroborating evidence, the alcohol level as reported in Dr. Bournakel's autopsy is of no value.  It does not verify alcohol consumption ans [sic] absolutely should not be construed as evidence of impairment."  [Id. at 5.]

3

Plaintiff argues that there is good cause to amend the scheduling order[1] to allow the addition of Dr. Navin because the jury is likely to be confused if Defendant 3090 is allowed to argue that Decedent contributed to his death because he was driving while intoxicated. Plaintiff stresses that there is no evidence, other than the b.a.c., that Decedent consumed any alcoholic beverages before his death. [Id. at 6-7.] Plaintiff argues that Defendants would not be substantially prejudiced by the addition of Dr. Navin because there is sufficient time for them to probe Dr. Navin's opinion and to respond with their own experts. On the other hand, Plaintiff will be seriously prejudiced if Dr. Navin is not allowed to testify. [Id. at 7.]

In its memorandum in opposition to the Motion, Defendant 3090 points out that, throughout this case, Plaintiff has repeatedly failed to comply with this Court's scheduling orders, particularly with regard to expert witnesses. Defendant 3090 notes that, in this Court's December 21, 2006 order denying its motion to strike Plaintiff's expert witnesses, this Court warned Plaintiff that the failure to comply with the applicable rules could result in sanctions, including the striking of witnesses. Defendant 3090 argues that the instant Motion

---

[1] The April 18, 2006 Rule 16 Scheduling Order set Plaintiff's expert disclosure deadline at September 5, 2006. The January 22, 2007 Rule 16 Scheduling Order set a deadline of February 21, 2007, but only as to Plaintiff's claims against County Defendants.

4

blatantly disregards the current scheduling order and this Court's warning.  [Mem. in Opp. at 3-5.]

Defendant 3090 also argues that it is suspicious that Plaintiff's counsel had a "random thought" about this case on the same day he met with another client who had heard of post-mortem fermentation.  Even if that is how the issue came to the attention of Plaintiff's counsel, Defendant 3090 argues that Dr. Navin should be excluded because Decedent's b.a.c. level has been known to the parties for almost three years.  Any evidence to refute the b.a.c. level should have been discovered long ago.  [Id. at 6.]  Defendant 3090 argues that to allow the addition of Dr. Navin at this point would render the scheduling order and the applicable rules meaningless.  [Id. at 8.]

In her reply, Plaintiff reiterated the arguments raised in the Motion.  She also states that Dr. Navin examined Decedent's post-mortem tissue samples since the filing of the Motion.  Dr. Navin found fungus and bacteria, which he asserts supports the possibility of post-mortem alcohol production.  [Reply at 4.]  Plaintiff submitted his amended report and photographs with her Reply.  [Exhs. E & F to Reply.]  Plaintiff argues that there will be no prejudice to Defendants, who already have a toxicology expert, Dr. Binh Ly, who was provided with Decedent's autopsy report and Dr. Manoukian's deposition in December 2006.  Plaintiff hypothesizes that this may have been

5

because Defendants themselves anticipated the possibility of post-mortem fermentation.  [Id. at 6.]

At the hearing on the Motion, Plaintiff's counsel argued that Plaintiff has been diligent in preparing her case. Counsel argued that the fact that he only recently learned of the possibility of post-mortem fermentation does not indicate a lack of diligence because it is an obscure scientific phenomenon. Counsel for Defendant 3090, however, argued that it is a well-known phenomenon that is often seen in admiralty cases where a decedent's body is found in water.[2]

## DISCUSSION

According to the April 18, 2006 Rule 16 Scheduling Order, Plaintiff's deadline to disclose expert witnesses was September 5, 2006 and Defendants' deadline was October 4, 2006. It also stated that: "Disclosure of the identity and written report of any person who may be called solely to contradict or rebut the evidence of a witness identified by another party pursuant to subparagraphs a and b hereinabove shall occur within thirty (30) days after the disclosure by the other party."  [Rule 16 Scheduling Order (filed 4/18/06) at ¶ 11.]  Plaintiff had up to November 3, 2006 to disclose rebuttal expert witnesses, depending upon the exact date that Defendant 3090 disclosed the

---

[2] Other than counsel's argument, no scientific support was provided for this proposition.

expert witness whose opinion Plaintiff sought to rebut.  Thus, even assuming, *arguendo*, that Plaintiff wishes to add Dr. Navin as a rebuttal witness,[3] Plaintiff must obtain an amendment of this Court's Rule 16 Scheduling Order.

A scheduling order "shall not be modified except upon a showing of good cause and by leave of . . . a magistrate judge." Fed. R. Civ. P. 16(b).  The good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order; if the party seeking the modification was not diligent, the court should deny the motion.  See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).  "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  Id. (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).  Prejudice to the non-moving party may serve as an additional reason to deny the motion, but the lack of prejudice to the non-moving party does not justify granting the motion if the moving party was not diligent.  See Johnson, 975 F.2d at 609.

The Court finds that Plaintiff's and counsel's failure to discover the possibility of post-mortem fermentation prior to

---

[3] It is unclear whether Plaintiff presents Dr. Navin as a rebuttal expert or an expert for her case in chief.  Although Plaintiff argues that Defendant 3090's defense theory regarding Decedent's intoxication necessitates Dr. Navin's testimony, Dr. Navin's amended report does not refer to, let alone rebut, any of the opinions of Defendants' expert witnesses.

7

Plaintiff's expert disclosure deadline does not indicate a lack of diligence.  This Court agrees with Plaintiff that the process is obscure and would not be readily known by reasonable counsel preparing for a case such as this one.  Once Plaintiff's counsel learned of the process, he took reasonable efforts to verify the scientific reliability of the process and to obtain evidence that it may have been a factor in this case.  Under these circumstances, Plaintiff made a reasonable effort to identify Dr. Navin as an expert witness and transmit his report to Defendants in a timely manner.  The Court acknowledges that the disclosure of Dr. Navin's opinions may have caused some prejudice to Defendants, but such prejudice can be mitigated through means other than precluding Dr. Navin's testimony, particularly in light of the fact that trial is not until September 25, 2007 and the discovery deadline is not until June 27, 2007.  Further, Dr. Navin's testimony is critical to the issue whether Decedent was driving while intoxicated, which bears directly on the cause of his death.  The Court finds that there is good cause to amend the scheduling order to allow Plaintiff to name Dr. Navin as an expert witness.  Plaintiff's Motion is therefore granted.

In order to mitigate prejudice, if any, to Defendants, Plaintiff shall produce Dr. Navin's expert report in a format which complies with the Federal Rules of Civil Procedure by March

23, 2007.[4]  Other than Dr. Navin, Plaintiff may not name additional expert witnesses.  Plaintiff shall also produce Dr. Navin for deposition by April 30, 2006.  Plaintiff shall pay the costs of the deposition, *i.e.* Dr. Navin's expert fees and the costs of the deposition transcripts, including the original transcripts.  The Court will also extend the defendants' expert witness disclosure deadline until forty-five days from the filing of this order.  Other than experts to rebut Dr. Navin's opinions, Defendants may not name additional expert witnesses.[5]

## **CONCLUSION**

On the basis of the foregoing, Plaintiff's Motion to Add Critical Witness James J. Navin, M.D., filed February 8, 2007, is HEREBY GRANTED.

IT IS SO ORDERED.

---

[4] Plaintiffs provided Dr. Navin's current report and curriculum vitae with the instant Motion and reply.  These documents, however, do not contain all of the information required by Rule 26(a)(2)(B), such as the compensation he is to be paid and the number of times he has testified as an expert witness within the past four years.  It is not readily apparent whether Plaintiff has provided this information to Defendants through other means.

[5] The Court notes that County Defendants' expert disclosure deadline is March 27, 2007.  That deadline still applies to all of County Defendants' expert witnesses, with the exception of any expert witness identified to rebut Dr. Navin's opinions.

DATED AT HONOLULU, HAWAI`I, March 16, 2007.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**SARAH C. WHITE, ETC. V. CAROL SABATINO, ET AL; CIVIL NO. 04-00500 ACK-LEK; ORDER GRANTING PLAINTIFF'S MOTION TO ADD CRITICAL WITNESS JAMES J. NAVIN, M.D.**